Thank you, Mr. Court. I'm Tarpenter, appearing on behalf of Mr. William Twine. Mr. Twine appeals a decision from the United States Court of Appeals on Veterans Claims based upon its exercise of jurisdiction under 38 U.S.C. section 7252 to review a matter that was before the Court of the Law, based upon what we believe is a misinterpretation of the Veterans Courts jurisdictional statute 7252B. Specifically, this case turns on the meaning of the phrase, Review in the Court shall be upon the record of proceedings before the Secretary and the Board, as found in the statute. We believe that because, in this case, Mr. Twine's testimony before the Board in anticipation of his August 2005 hearing, which was transcribed, was substantially incomplete in that 40 of the answers were- Okay, so what is the, is there any test, are there any limitations to what you're proposing here? You say it was substantially incomplete. So is that the standard we are to apply, or is it any time it's different? And what if there are a few typos in the transcript? What if some names are used incorrectly? What are the limits to what you're advocating? Well, I think it has to be a substantial incompleteness. In other words, I don't believe typographical error or a single inaudible response will be sufficient. It has to be a substantially incomplete portion of relevant proceedings before the agency below. And in this case, we're dealing with the oral testimony- Quantity or quality? Because what substantial can ultimately get to is kind of where the CABC was, was it not? Yes, it was. There has to be some prejudice. Right. Well, actually, the Court ruled that the record as a whole was not deficient with regard to determinative factors, which I believe is the same qualifying statement as you're suggesting. Right. Which could arguably fall into your test of substantial, if you want to use the word substantial to mean it's deficient in relevant respects. Well, except that, at least as I read the decision below, what Judge Castle did was to look at what he referred to as the determinative factors. In other words, what was at issue in the case. I believe the language of the statute talks about the record is what is being reviewed. And if there is a problem with the record, and in this case there is a clear and evident problem with the record, then that impairs the jurisdiction of the court. But then, again, we're back to then the initial thing. What does problem mean? Does problem include any problem? And if your answer earlier was a substantial problem, right, but how do we define substantial? Well, quite frankly, Your Honor, I believe that that is your task, and I don't believe that that is defined in any way in the statute. The statute simply says record of proceedings before the secretary and the board. Clearly, this was a record of proceedings, and it was critical to the appeal that was taken by Mr. Klein, and it was necessary evidence upon which the board's remand in 2005 was predicated, and then that vital information was missing from the record and could not have been reviewed by the reviewing court. So now we've used critical, substantial, vital, so we make that assessment. So we have to conclude that the CABC looked at what was different and what was missing and drew a conclusion that that information that was missing was not critical, vital, necessary, substantial. Why isn't that exactly what they're supposed to be? Well, because I don't believe that that's the proper exercise of their jurisdiction. The Congress provided for a remedy for this precise circumstance when a remand is appropriate, and a remand is appropriate in this case. But so who's supposed to decide whether, if you agree that they only have jurisdiction if a critical, vital, necessary part of the record is missing? Who's to make that determination? They have to make that determination. The CABC has to make that determination. That's correct, and I believe that they require the guidance of this court in how to do that. Judge Castle focused on what he referred to as with regard to any of the determinative facts. It is not a question, I submit, as to whether or not the determinative facts are as a whole presented by the record, but whether or not the record itself has a fundamental defect. And in this case, there is a fundamental defect. Take, for example, if there was a VA examination that the board had relied upon, that the VA had utilized to make the rating determination, and that examination was not available. Clearly, in that circumstance, when that record got to court and it didn't contain that examination, the matter would have to go back for another examination. The exact same thing is true here when you have an inaudible recording of the transcription of the lay evidence of the veteran. What would it make of the regulations? I mean, the regulations provide an avenue by which the veteran can seek a remedy for this kind of situation, right? Right, but they presuppose knowledge on his part. And there is nothing in the record to suggest that Mr. Twine or his counsel had any knowledge that this recording was defective. At what point did Mr. Twine and his representative learn that the recording was inaudible? It is my understanding that they learned that when they got the copy of what was then called the designation of record when the appeal was filed in court. In other words, there hadn't been a transcription that had been provided. He did not request, as he could have requested, a transcript of his testimony. Right. What happens in these cases, I take it, is that when you appeal to the veteran's court, then the transcript of the hearing before the board member is prepared. Is that right? Or is that prepared on request? Or how does that work? I'm not entirely sure how the board operates. I don't believe that there is a transcription of that recording unless there is an appeal taken. Okay. But I don't work for the board. I guess you could, but you say in the ordinary course you think probably not. I would assume not simply because the recording would be available to the judge and the judge would listen to the recording. And there would be, unless pursuant to the regulations, there was a request for the written copy of the transcript. Now, that's another point in this case, is that in 2005, Mr. Twine Just to clear up before you answer this question, the regulations, so he did get the transcript shortly after the appeal was filed, you say? That's correct. But this is after the regulations contemplate that, right? One of the regulations that I referred to say within 120 days after the filing of the appeal, you can file this. Right. But this transcript happened in 2005 before the decision at the Board of Veterans Appeals. And once the Board of Veterans Appeals made its subsequent decision in 2006, even in that 120-day period for filing the appeal, that decision is final and you can't put anything more in the record. In other words, you can't go back and reconstruct the record, at least under the Veterans Court's interpretation under the Rogozinsky case, that nothing more can be put into the record that wasn't in the record at the time. What was in the record at the time was this defective transcript. I thought, but I thought that's the point of the regulations, that in this circumstance, if you recognize that in a timely fashion, you can move to reopen the record and go back. I thought that's- While the matter is before the Board, Your Honor, and I- I thought the regulations were 180 days, 120 days from the date of the final board decision. Am I wrong? Am I misreading this? I don't know. Yes, except that in applying that when you go to court, even if it were discovered within that 120-day window, then the matter is final at court and there is no remedy at court. And the disclosure wasn't made to Mr. Klein and his attorney representative that the recording was defective. So they asked in the Veterans Court that it be set back for reconstruction of the record? Yes. Reconstruction of the record. Essentially, a re-offering of his testimony before the Board. That's what the judge said. That there were sufficient determinative factors that he could make his decision based upon what was in the record, excluding this information. And essentially, it becomes a de facto exclusion of testimony, and it's critical testimony. It's the lay evidence of the veteran about the severity of his symptoms. That is the question that concerns me. Was there any suggestion in the briefing to the court, the Veterans Court, that the testimony of the veteran would have significantly departed from or elaborated upon, for example, the medical reports which contain references to the veteran's condition and the brief description, at least in the Board opinion, of the veteran's testimony? It's my understanding from counsel that by the time this was discovered, apparently two years or more thereafter, that there was no clear recollection on the part of the veteran as to what it was he specifically testified to. And she was not there. And there was obviously not a recording available to make that kind of argument, that he said this specific thing. Well, what we do know, Your Honor, is that in 2005, the testimony moved the board's veteran's law judge to order a remand based upon a specific determination that after the testimony, the matter needed to be remanded to the VA for further development because this testimony was not consistent with the medical information that was currently a record. And clearly, his lay testimony as to the severity of his symptoms go directly to how this matter should have been evaluated. And it's our position that Judge Kassel or no judge could, under 7252, properly review the matter without a complete or substantially complete record. Now, as to your jurisdictional argument, the government cites the Park case, which is an MSPB case. But a parallel argument was made in that case that under 7701 of Title V, which requires review on a transcript, I think, of language to that effect, that there's no jurisdiction where there was no transcript added or transcript prepared. But the court rejected that. What do you think is the difference analytically between the court's handling of that jurisdiction and the question in this case? Well, you're talking about a specific jurisdictional statute in 7252 that is substantially different from the question that was presented at Hart. The question that was presented at Hart? Hart. Yes, Hart. Sorry, I wasn't sure that was the right name. It was different because it went to a different question than the record itself. That actually went to a transcript. Well, that's a more specific requirement in 7701 that you actually have a transcript as opposed to just having a review on the record. It would seem to me that the jurisdictional argument, if valid, is stronger there than it is here. Because you specifically say you need a transcript. Well, it says that what you're dealing with in the context of a veteran's case is the record that is developed by the VA. The VA is expressly charged with the development of the record. And when that development of the record is incomplete, you cannot have judicial review because there is a missing piece. You cannot conduct review on a record that essentially is unavailable for review. And so I think it's a stronger argument than the specific transcript because the question then becomes, is this transcript not available or is it only partially not available? At least that's what I see at this stage. And I see I'm way into my rebuttal time. I'd like to reserve. We'll return to your rebuttal time. Thank you very much. Thank you very much. May it please the Court. The Court should confirm the Veterans Court's decision because Mr. Twine has not demonstrated any legal error in that decision. According to Mr. Twine, the error is that the Veterans Court considered the rule a harmless error. According to Mr. Twine, the Veterans Court should immediately remand it and not consider the rule a harmless error. That contention is plainly incorrect. Well, the statute is quite broad, unequivocal, and without exception. The statutory language at issue here in 7252B, that there shall be review in the Veterans Court on the record of proceedings before the Secretary and the Board, that same language is also found in Section 7261B, the identical language. And what 7261B does is it points out that the Veterans Court's duty to conduct a review is tied to two things. First of all, it's tied to the administrative record, and that is the administrative record, not some new de novo record that is created in the Veterans Court. And it's tied, secondly, to the rule of harmless error. So in order to decide whether a gap in the transcript is in fact something to be concerned about, whether it is a reversible error, what the Veterans Court had to do is decide whether the error was prejudicial or whether it was harmless. And that is exactly what the Veterans Court did in this case. The reason they could do it in this case is because the record, as the Veterans Court pointed out, the record as a whole was adequate to conduct a review. What they had before them was a 16-page board decision. And in that board decision, the board judge, which is the same board judge who heard Mr. Twine testify, this board judge made explicit findings summarizing his testimony. And they're stated and they're found in the petitioner's appendix at page 35. And the board judge found that Mr. Twine testified that he had problems during periods when he was not working, that he had flashbacks, nightmares, mood swings, depression, that he easily became angry, and that he stayed at home when he was not working. So the board judge made explicit findings that this is what... Mr. Twine did not argue that there was any discrepancy between what he actually said and what the board judge found that he said at the hearing. He was saying that there was an inconsistency between what the medical record evidence was and his testimony that the board required to go back. In fact, he did not argue, Mr. Twine did not argue to the Veterans Court that there was an inconsistency between what he said at the hearing and what the board judge found. The board concluded there was an inconsistency. That's not correct. That is not correct at all. Was there a remand? There were two board decisions. That leads to some of the confusion. In the first board decision, the board judge said there ought to be another medical examination. The last VA examination was conducted back in, I think, it was 2002. Was there a basis for that ruling in the 2005 board decision for saying that there needed to be another medical examination? There needed... because first, there were two reasons for the remand in the first board decision. The first reason is that the last VA examination was back in 2002. So there ought to be another VA medical examination. And at the hearing, Mr. Twine had indicated that he was willing to go for another VA medical examination. So the board judge said, let's have another medical examination. Also, if you read that decision, the first decision from the board, the board judge pointed out that the record was lacking medical records. Mr. Twine had been examined repeatedly at a mobile Alabama clinic by a psychiatrist there. And all of those medical records were not in the record before the board judge at the time of the first decision. So there were two reasons for the remand at that point. But it was not that there was any inconsistency between his testimony and the medical evidence? No. That was not the... That was not one of the reasons for the remand. And what about the second board decision? The second board decision is the 16-page decision of the board that I referred to where the board judge summarizes Mr. Twine's testimony at the hearing. And this is in the petitioner's appendix at page 35. And this relates specifically to portions of the testimony that if you look and you compare the board's decision with the transcript, the transcript is response inaudible, response inaudible. But the board judge nevertheless finds that Mr. Twine testified that he had nightmares, mood swings, depression, that he easily became angry, that he stayed home when he was not working. All of those findings as to what he testified to, when you look at the transcript, the parallel pages of the transcript at pages 12, 14, 15, 16, their response is inaudible. So what you had in Mr. Twine's case was a summary of his testimony at the hearing. But then I think more importantly, what you had was detailed medical records, detailed medical records over a lengthy period of time. And in each of these medical records, Mr. Twine met with a psychiatrist. The psychiatrist questioned him, and he told the psychiatrist as to his signs and symptoms, what he was feeling. Can I move on to unregulated? Sure, I'm sorry. Unregulated. Yes. The ones that provide for some sort of dual-argument. Did he have an opportunity here to invoke the regulations? And what was the time frame between when he got the transcript and if he went forth for it? Yes, I wanted to point out that if I could just answer, it might be a little longer answer, but what the record shows in this case is that there was a letter from the Veterans Administration providing a statement of the case dated February 2, 2006. And this letter indicated that there was a transcript, that the transcript was in existence as of January, February 2006. Now, I'm not asserting that Mr. Twine knew what that transcript said, because there really is no evidence in the record that shows when he knew that the transcript was incomplete. But the transcript was definitely in existence as of January, February 2006. A motion for the second court decision. Correct. Okay. Correct. And we know this because of the letter that the VA sent to Mr. Twine indicating that there was a transcript. Okay. And this is part of the statement of the case where the Veterans Administration indicates this is all the evidence we have, and they list all the evidence. One of the things they list is the transcript. You asked about the timing. If he had known, certainly a motion could have been made at that time under the regulation to complete the transcript. He could have made a motion. Did someone decide? Did they provide the transcript? The transcript was certainly provided at a certain point, but I have not been able to determine whether it's provided any earlier than Mr. Carpenter has represented. Which would have been during the pendency of the appeal. Yes. Under the appeal to the court. The appeal to the court is filed in May 2006. So shortly after that, I would assume he... But what is the regulation? What's the time frame in the regulations? Is it 120 days after the filing of an appeal? Well, they allow for a reasonable period of time after the filing of the appeal. So the appeal was filed May 2006. So within a reasonable period of time, he could have asked to make a motion under that regulation. What was the date of the letter from the VA in 2006? That was February 2, 2006. And it is a letter whereby the VA transfers the statement of the case. And in that statement of the case, it identifies a transcript of the June 2005 hearing. I did also want to point out that before the Veterans Court, Mr. Twine did not argue for a new hearing. He didn't ask for the opportunity to have a new hearing. And you can see that in the... Exactly what he thought was the problem, that he needed supplementation. He contended before the Veterans Court that the board had failed to give an adequate statement of reasons. And that the board had not made an evaluation of Mr. Twine's testimony, of the probative value of his testimony. And you can see this in the... It would be in the petitioner's appendix where they include a copy of the brief, the opening brief before the Veterans Court. And therefore, he was entitled to what? An automatic remand. A remand for, presumably, a due authorization. Well, what he told the Veterans Court was that he did not want a new hearing. And you firmly said he didn't want a new hearing. In the reply brief, page 3, he says, Appellant, which is Mr. Twine, did not argue for a new hearing. And I apologize, the reply brief is not part of the appendix. Well, the reconstruction of the transcript would not be necessary. It would not be a new hearing. It would be to complete it so that the court could have a proper record to review. I don't know how it could be... This can be done if any of the parties remember the gist of what the testimony was. Whether it's the board judge or his representative. I mean, somebody can proffer an approximate version of what was said. I suppose if everybody agrees, that would be sufficient. It could have been done at the proper time. But what I wanted to point out here is that the Veterans Court did precisely what it was supposed to do. It evaluated the gap in the record and in the context of the record as a whole. Is this asserted error, meaning a gap in the transcript, is that asserted error a harmful error? That's the rule. The court has asked repeatedly, what is the standard that one should use to evaluate a gap in the transcript? The standard is exactly what the Veterans Court applied in this case. Is it a harmful error in this case, based on the record? And what's that issue? Is it the testimony of the open court? Certainly, it's important. But... It wasn't there. Excuse me? It wasn't there. It was substantially not there in the transcript. But we did have a summary of what he said in the board decision. No one ever contended that the board got that summary wrong. No one ever contended that the medical records were wrong. Those medical records contained his statements as to what symptoms he was feeling and undergoing over a long period of time. He was just going with the evidence. The board's statements were findings on that evidence. He's got to know what they have. He's got to be able to present the evidence and show the evidence. Isn't that what he's trying to do, is get the evidence, recreate it, that he could perhaps show what the board thought? But in this instance, I understand what he's trying to accomplish. But on this record, the gap was not harmful because we had all of his statements to the medical doctors, and he is not contending that those medical doctors got his statements wrong. And it was based substantially on those statements that the board reached its decision as to the level of disability, whether it was 30 percent or 50 percent and over what periods of time. You had all of these medical records. They were detailed, they were good, and they were at the right periods of time, and they contained his statements. And that was an adequate record to make the decision. So can you come up with an example of when it would be prejudicial? I mean, presumably in all these cases you have medical records and you have your veteran testify. Can you give an example of when it would be prejudicial if you missed the veteran's testimony? Well, I think you could easily make up a hypothetical where it would be prejudicial. If you were missing all of the veteran's testimony and if the medical records did not fill the gap, you have to look at the record as a whole, which is what the Veterans Court did in this case, and decide whether there is an adequate basis to affirm. Well, I suppose one hypothetical that's kind of extreme, probably wouldn't occur very often, but one hypothetical case which I think everyone would agree that there's prejudice from the initial transcript. It would be a case in which the veteran's position is the board's characterization of my testimony was preposterous. I didn't say anything like that. My testimony was completely to the contrary. I don't know where they got their characterization. I don't see anything to that effect here, but in that situation there certainly would be if you would accept the veteran's assertion that there was a glaring inconsistency that would seem to be prejudicial. I would add a few more facts to your hypothetical. Certainly I would see that. That could be a situation of prejudice. But then again, the standard, which is the question here, is what is the standard to evaluate the gap in the transcript? The standard is precisely what the Veterans Court applied. It is a harmful error standard. It is the standard that has to be applied in every case, especially in light of the Supreme Court's decision in the Sanders case, pointing out that harmful error must be applied. I see I overran my time. Before this, I have a couple of questions. I'd like to direct the Court's attention to page 21 of the joint appendix, which is the second page of the August 19, 2005, remand. At the concluding paragraph of the second paragraph under the header of remand, it refers to an August 2004 letter from a psychiatrist in Mobile, Alabama, at the VA outpatient clinic. This is a VA psychiatrist that we're talking about, and none of the treatment notes from that VA source were in the record. Consequently, that was the first part of the remand. Mr. Proctor, go ahead. Then at the top of the next page, at page 22, it says, additionally, the August 2004 letter indicated that the veteran's symptoms had worsened, that he'd become anxious in groups larger than 8 to 10 people. And then she concludes that at the hearing, the undersigned veteran's law judge observed that the veteran appeared visibly nervous and uncomfortable in the hearing setting. Now, that is not repeated in the recitation that was referred to in the second board decision. And then the next paragraph says, upon consideration of the above, the board is of the opinion that the record may not accurately reflect the current nature and severity of the veteran's disability. Now, that was the basis for the remand, because there was an inconsistency. And for the government to get up here and to tell you that there was no inconsistency observed by the board is simply not an accurate characterization of the content of this remand. Next, the government relies upon some statement of the case that they're referring to from February of 2006, which is not in the record. And a statement of the case would not have been issued in 2006, because the matter was already in appeal status. If there is such a document that refers to a transcript being in existence, it would have been in a supplemental statement of the case. The bottom line is it's not part of the record of these proceedings, and it wasn't something that was relied upon by Judge Kessel in making his determination about whether the determinative factors had been met by the record. He made that on the basis of his examination of the totality of the record. That's not the criteria. That's not the standard under 7252. Under 7252 is, do you have a record of the proceedings? And we don't have a record. We have an incomplete, a defective, a deficient record. Yes, sir. Where does the tape recording of the hearing reside? At the board. At the court. So there's actually... Board, board, board. Oh, at the board. So that tape recording is not transmitted to the court along with the rest of the material. No, we don't. But it is part of the, and here we get into the technicalities of what's part of the record, but it is part of the record of the proceedings. It exists, so far as we know. So far as I know, although I have to confess it's my understanding that after the transcript is made, they destroy the recording. Oh, really? So I'm not entirely sure there is an actual recording that still exists. All right, one other question, if you are there. Here's what, at the end of the day, gives me pause about your submission, and it relates to my hypothetical question and discussion, which is what I don't see in this case is a representation that the board judge, and it was the same board judge in both of the board proceedings, who heard the testimony, did not accurately portray the testimony, or there were important omissions. I mean, presumably, if we were going to go back and reconstruct this record, presumably Mr. Twine and his representative would get together and say, this is octophorous to what he said. So that is something that presumably there is a position Mr. Twine would take. If all we're going to do is to go back and he's going to say, well, I said pretty much what the board judge said, then a remand is kind of pointless. Has there been any effort to ascertain that he would say something dramatically different from your characterization of what he had to say? The problem, as I see it, Your Honor, is that the statute says that the review is conducted on the record. And if there isn't a record of significant testimony from the veteran, then everybody is forced to speculate about what that testimony would be. All we have is a characterization in about four lines at the bottom of a single page in the board's decision that summarizes the judge's view of that testimony. If there was actual testimony, then the advocate at the veteran's court would be able to say, well, in addition to this summary, the veteran said this, and this, and this, and this, because you have a record. That's the defect here in the court having exercised jurisdiction when there is no record. There is nothing for the veteran to be able to point to, and that is the protection that is afforded the veteran under 7252. But that would suggest that you are not really asking for a reconstruction of the record, but rather a new hearing altogether. I don't know that there is a significant difference there, Your Honor, because the bottom line is he has to describe what his symptoms were. And he obviously did that well enough that it prompted a remand based upon the physical observation that is noted in what I read to you and the information that was provided by the VA treating psychiatrist about how he saw that and that there was a disconnect between what the rest of the medical evidence said and what this medical evidence said, which was only represented by a letter and not by the treatment notes. Thank you very much, Your Honor. Thank you.